NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

KELLY W. WEIL (SBN 291398)
kweil@cpmlegal.com
THERESA E. VITALE (SBN 333993)
tvitale@cpmlegal.com
**COTCHETT, PITRE & McCARTHY LLP**
2716 Ocean Park Boulevard, Suite 3088
Santa Monica, CA 90405
Telephone: (310) 392-2008
Facsimile: (310) 392-0111

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELITA MILLARE, individually, | CASE NO. 2:21-cv-8398 |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | 1. **FINANCIAL ELDER ABUSE;** |
| BANK OF AMERICA, N.A., a Delaware Corporation, MERRILL, A BANK OF AMERICA COMPANY, a Delaware Corporation, | 2. **NEGLIGENCE;** 3. **BREACH OF FIDUCIARY DUTY; and** 4. **UNFAIR BUSINESS PRACTICES** |
| Defendants. | **-AND-** |
| | **DEMAND FOR JURY TRIAL** |

**COMPLAINT**

# **TABLE OF CONTENTS**

**Page No.**

I. INTRODUCTION ...................................................................................... 1

II. JURISDICTION AND VENUE ................................................................. 2

III. PARTIES .................................................................................................... 3

IV. FACTUAL ALLEGATIONS .................................................................... 4

    A. Plaintiff Saved for Retirement While Caring for Others ........................... 4

    B. Defendants Knew or Should have Known that Plaintiff Was the Victim of Financial Abuse ...................................................................................... 5

    C. Defendant Violated Its Own Policies and Assurances to Monitor Transactions for Suspicious Activity ........................................................ 6

    D. Defendants Knew or Should Have Known Their Actions were Likely to be Harmful to Plaintiff ........................................................................... 7

V. CAUSES OF ACTION ............................................................................ 10

FIRST CAUSE OF ACTION
Violation of The Elder Abuse And Dependent Adult Civil Protection Act
Cal. Welf. & Inst. Code § 15600, et seq.
(Against all Defendants) ........................................................................... 10

SECOND CAUSE OF ACTION
Negligence
(Against All Defendants) ......................................................................... 12

THIRD CAUSE OF ACTION
Breach of Fiduciary Duty
(Against Merrill, A Bank of America Company) ...................................... 13

FOURTH CAUSE OF ACTION
Violation of California's Unfair Competition Law Bus. & Prof Code § 17200
(Against all Defendants) ........................................................................... 14

VI. PRAYER FOR RELIEF .......................................................................... 15

VII. DEMAND FOR JURY TRIAL ............................................................... 16

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**

i

Plaintiff Angelita Millare ("**Plaintiff**") individually, brings this action for damages against Defendants Bank of America, N.A. (a Delaware Corporation) and Merrill, a Bank of America Company (a Delaware Corporation) ("**Defendants**"). Plaintiff makes the following allegations based upon information and belief.

## I.     INTRODUCTION

1.     This action arises out of a calculated and devastating scheme that relied on and benefited from the assistance and aid provided by agents and representatives of Bank of America, N.A. ("**BofA**") and Merrill Lynch, now called Merrill, a Bank of America Company.

2.     Between December 2020 and May 2021, Defendants knowingly and actively assisted in defrauding 69-year-old Plaintiff Angelita Millare out of nearly $370,000.00 (her entire life savings and more).

3.     The money Plaintiff had saved for retirement by working as an in-home caregiver for decades was gone in a matter of months, thanks to Defendants' blatant violations of the Elder Abuse and Dependent Adult Civil Protection Act.

4.     Defendants' representatives across six branches (along with its inadequate policies) failed to protect Plaintiff, a loyal and vulnerable customer, when they wired hundreds of thousands of dollars from her savings accounts to six different overseas banks, solicited and sold Plaintiff Merrill investment products, assisted in over $100,000 in-person cash withdrawals and authorized nearly $50,000 in credit-card cash advances.

5.     Prior to December of 2020, Plaintiff had never completed a wire transfer with Bank of America, N.A. and had never taken out a line of credit.  She had three bank accounts with Bank of America, one checking and two savings accounts, and had been a loyal customer for over 30 years.

6.     The sudden activity on Plaintiff's account strongly suggested the financial exploitation of an elder that Bank of America's own website states is the most common form of elder abuse.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

7.     Nonetheless, and despite Defendants' assurances to customers like Plaintiff that their fraud prevention "policies are constantly evolving to stay ahead of new strategies used by fraudsters," [1] that they offer "multiple layers of security protection,"[2] and "continuously monitor [customer] transactions for suspicious activity,"[3] not one of the numerous agents of the company, including those who personally completed the fraudulent transactions and observed the sudden onslaught of irregular activity, reported that financial elder abuse may have occurred, delayed (or even questioned) the transactions, or prevented them from happening.  Cal. Welf. & Inst. Code § 15630.1.

8.     In violating their own policies and procedures, Defendants knew or should have known that their actions were likely to be harmful to Plaintiff.

## II.     JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action because Plaintiff is a citizen of California; Bank of America, N.A. is incorporated under the laws of Delaware and has its principal place of business in North Carolina; Merrill, a Bank of America Company is incorporated under the laws of Delaware and has its principal place of business in New York; and the amount in controversy exceeds $75,000.00 exclusive of interests and costs. 28 U.S.C. § 1332(a)

10.    This Court has specific personal jurisdiction over Bank of America, N.A. because Bank of America, N.A. has sufficient minimum contacts with California, has purposely availed itself of the benefits and protection of California law, and does a substantial amount of business in and with the State of California (including contracting with the State of California to provide services to California citizens), such that the Court's exercise of personal jurisdiction accords with due process.

_____

[1] https://www.bankofamerica.com/security-center/faq/protecting-information/
[2] *Id*.
[3] https://www.bankofamerica.com/security-center/understand-merchant-compromise/

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP
**COMPLAINT**                                                                                               2

11.     This Court has specific personal jurisdiction over Merrill, a Bank of America Company, because Merrill has sufficient minimum contacts with California, has purposely availed itself of the benefits and protection of California law, and does a substantial amount of business in and with the State of California (including contracting with the State of California to provide services to California citizens), such that the Court's exercise of personal jurisdiction accords with due process.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the acts or omissions giving rise to the claims in this Complaint occurred in this District, and because Defendants are subject to the Court's personal jurisdiction with respect to this action.

### III.     **PARTIES**

13.     At all relevant times, Plaintiff Angelita Millare was a resident of the State of California, City of Thousand Oaks, County of Ventura.

14.     Defendant Bank of America, N.A., is one of the largest banking associations in the United States. It is incorporated in the state of Delaware and does significant business in California.

15.     Defendant Merrill, a Bank of America Company is a large investment management and wealth management division of Bank of America.  It is incorporated in the state of Delaware and does significant business in California.

16.     Plaintiffs allege that at all times relevant to the events giving rise to this action, each and every Defendant was acting as an agent or joint venturer of each of the other Defendants. Plaintiffs further allege that at all times relevant to those events, each and every Defendant was acting within the course and scope of that agency or joint venture at the direction of or with the full knowledge, permission, or consent of each and every other Defendant. In addition, each of the acts or omissions of each and every Defendant was made known to, and ratified by, each of the other Defendants.

17.     There are several individuals and/or entities whose true names and capacities are currently not known to Plaintiff. Evidence may come forth that others

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**                                                                                     3

are legally responsible and liable to Plaintiff to the extent of the liability of the named Defendants. Plaintiff will seek leave of the Court to amend this Complaint to reflect the names and capacities of other potential Defendants when such identities and capacities become known. Plaintiff reserves the right to amend this claim pursuant to Fed. R. Civ. P. 15(a) and Fed R. Civ. P. 21 with leave of the Court to add and amend potential defendants.

## IV.       FACTUAL ALLEGATIONS

### A.   Plaintiff Saved for Retirement While Caring for Others

18.     Plaintiff Angelita Millare ("**Plaintiff**") moved to Southern California in 1987, seeking work in nursing homes and as a home health care worker, in order to provide for her husband and two children back home in the Philippines.

19.     For 15 years, Plaintiff worked in convalescent homes and mental health hospitals, often working a 12-hour day shift followed by a 10-hour night shift, for minimum wage.

20.     Other than the $200-$250 per month that Plaintiff sent to her children, she spent little, and began saving for retirement early on.

21.     In 2004, Plaintiff accepted a job caring for a local physician who was suffering from Parkinson's. When he passed away five years later, Plaintiff moved into the physician's home to care for his wife, who had developed Alzheimer's and could no longer live alone.

22.     Plaintiff continued to live frugally and planned to retire and return to her children and grandchildren in the Philippines upon the death of the physician's wife. After 15 years of service to the family, she had saved hundreds of thousands of dollars.

23.     Tragically, in November 2018, Plaintiff's son died suddenly. Plaintiff was distraught but continued to care for the physician's wife until her death the following year.

24.     In February 2020, Plaintiff purchased a ticket for Manila for May of that year. The following month, the COVID-19 pandemic derailed her plans. Her plans remained uncertain through 2020, after turning 69 years old.

25.     In November 2020, alone for the Thanksgiving holiday and grieving her son on the second anniversary of his death, Plaintiff was contacted via Facebook by a man claiming to be an active-duty officer stationed in Kabul.

26.     Plaintiff was groomed and deceived by the man, who called himself, "Cliff." Cliff explained that he needed a lot of money fast, and convinced Plaintiff to lend him the funds.

27.     Caught up completely in Cliff's dramatic crisis, Plaintiff walked into her local BofA branch in Newbury Park and requested help wiring $7,000.00. Plaintiff met with the assistant manager at the branch, Desiree Toofan. Upon reviewing Plaintiff's bank account information and history of diligently saving, Desiree knew or should have known that Plaintiff had carefully saved hundreds of thousands of dollars over many decades for her retirement.

28.     Desiree suggested that Plaintiff speak with the on-site Merrill representative to open an investment account. Desiree called over the representative, Alice Chu, who met with Plaintiff and convinced her to transfer over $50,000.00 from her savings account to a Merrill investment account that same day.

29.     In the following months, other BofA agents from Desiree and Alice's Branch and two other branches assisted in defrauding Plaintiff of her entire life savings, around $320,000.00, and nearly $50,000.00 in additional cash advances.

**B.      Defendants Knew or Should have Known that Plaintiff Was the Victim of Financial Abuse**

30.     Plaintiff banked with BofA (and its wholly acquired predecessor at the same branch location) for more than 30 years. In that time, she never sent a wire through BofA and never requested a cash advance via her BofA credit cards.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**                                                                                                    5

31.     Most of Plaintiff's BofA banking history consisted of saving, and by 2019, she had saved a total of $390,000.00 across three accounts (one checking account and two savings accounts).  Defendants knew this.

32.     By 2020, Angelita was over the age of 65 and residing in California, an "Elder" as defined by Cal.Welf. & Inst.Code § 15610.2.

**C.     Defendant Violated Its Own Policies and Assurances to Monitor Transactions for Suspicious Activity**

33.     At all relevant times, Defendants knew that elderly individuals are especially susceptible to financial fraud and that financial elder abuse accounts for more than $37 billion in losses each year (according to the Consumer Financial Protection Bureau).  As explained by BofA on its website, "recent studies suggest that financial exploitation — the illegal or improper use of an older adult's funds, property or assets — is the most common form of elder abuse."[4]

34.     Even more, BofA lists tell-tale signs, or "red flags," explaining that victims of financial scams may be "instructed not to trust Bank of America, or to respond to questions in untruthful ways" and "pressured to send money."[5]

35.     Likewise, BofA promises customers that its "policies are always evolving to stay ahead of new strategies used by fraudsters" via "multiple layers of security protection."[6]

36.     Most notably, BofA claims to "continuously monitor [customer] transactions for suspicious activity."[7]

37.     Merrill's website specifically states that "[f]raud protection is not just for credit cards, but can also affect common banking services and wire transfers. That's

---

[4] https://www.bankofamerica.com/signature-services/elder-financial-services/
[5] https://www.bankofamerica.com/security-center/avoid-bank-scams/
[6] https://www.bankofamerica.com/security-center/faq/data-compromise/
[7] https://www.bankofamerica.com/security-center/understand-merchant-compromise/

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP
**COMPLAINT**                                                                 6

why Bank of America protects your information through the use of banking services safeguards."[8]

38.    One of the services Merrill offers to customers is access to Bank of America's "Early Fraud Warnings," "designed to identify potential fraud if unusual or abnormal spending patterns occur in your account."[9]

39.    Further, Merrill offers customers "The Merrill Edge Fraud Protection Guarantee" for Merrill account holders, which states that Merrill "will reimburse [customers] for quantifiable monetary losses that occur…due to unauthorized third party activity."[10]

40.    BofA and its agents and representatives, including on-site Merrill advisors and representatives, is and has been a mandated reporter of suspected financial abuse of an elder, such as Plaintiff, as defined by the current version of Cal.Welf. & Inst.Code § 15630.2 since January 1, 2020.

**D.    Defendants Knew or Should Have Known Their Actions were Likely to be Harmful to Plaintiff**

41.    In violation of their own fraud prevention policies and their failure to monitor Plaintiff's transactions for suspicious activity, beginning on December 3, 2020 and continuing in rapid succession through February 25, 2021, BofA representatives completed the following wire transfers from Plaintiff's BofA accounts:

a.    December 3, 2020, Newbury Park Assistant Manager, Desiree Toofan, wired $7,000.00 to Philippine National Bank for "Family support."

b.    December 8, 2020, Westlake Village Financial Advisor, Anahita Rezvan, wired $17,500.00 to China Banking Corporation for "buying property."

---

[8] https://www.ml.com/privacy-and-security-center/protecting-financial-transactions.html
[9] *Id*.
[10] https://www.ml.com/privacy-and-security-center/mymerrill-fraud-protection.html

c.      December 28, 2020, Newbury Park Lending Specialist, Jose Barrera, wired $30,000.00 to Security Bank Corporation for "Family Support."

d.      January 11, 2021, Westlake Village representative, Niyoosha Nikmaram, wired $30,000.00 to Philippine Business Bank for "Purchase a Car."

e.      January 19, 2021, Newbury Park Lending Specialist, Jose Barrera, wired $10,000.00 to Metropolitan Bank and Trust for "Family Support."

f.      January 25, 2021, Newbury Park Collections and Recovery Relationship Specialist, Remi Escobar, wired $25,000.00 to "Extras Emporium Bags" via Metropolitan Bank and Trust for "Goods."

g.      January 28, 2021, Newbury Park representative, Matthew Fogelstrom, wired $30,000.00 to "Extras Emporium Bags" via Asia United Bank Corporation for "Goods."

h.      On February 11, 2021, Newbury Park Collections and Recovery Relationship Specialist, Remi Escobar, sent two wires, each for $25,000.00 to "Extras Emporium Bags" for "Goods," to two different banks, Asia United Bank Corporation and Metropolitan Bank and Trust.

i.      On February 25, 2021, Newbury Park Relationship Manager, Andrew Davis, wired $30,000.00 to "Extras Emporium Bags" via Asia United Bank Corporation for "Goods."

j.      On March 19, 2021, Newbury Park Lending Specialist, Jose Barrera, wired $50,000.00 to "Luxury Jewelries Gold Trading" via Rizal Commercial Banking Corporation for "Goods."

k.      On May 26, 2021, Oaks Mall Relationship Manager Business Owner Specialist, Michele Reyes, wired $10,000 to Metropolitan Bank and Trust "For a Car."

42.      In addition to the wire transfers that drained Angelita's BofA accounts of $289,500.00 of her hard-earned retirement savings, BofA representatives and agents assisted in withdrawing $100,500.00 in cash from her accounts. During one occasion

on December 18, 2020, BofA employees assisted in withdrawing $10,000.00 and advised Plaintiff to visit a different branch to withdraw the additional $7,500.00.

43. By February of 2021, Plaintiff's savings accounts were drained. With nowhere else to go, she turned to her Merrill Mutual Funds, of which Alice Chu at the Newbury Park BofA had opened for her just two months earlier.

44. On February 11, 2021, a BofA agent assisted Plaintiff in: (1) transferring $52,150.81 from her Mutual Fund account to her savings, (2) withdrawing $2,000.00 cash, and (3) sending two wires for $25,000.00 to a company purportedly called "Extras Emporium Bags," to two different banks for what was only described as "Goods."

45. On February 25, 2021, the same day a BofA agent assisted Plaintiff in wiring another $30,000.00 to "Extras Emporium Bags," another agent transferred $22,314.59 from Plaintiff's final Merrill Investment Fund to her savings.

46. On March 17, 2021, Plaintiff was desperate, with no money reserves left to pull from, and still unaware she was being defrauded. With the assistance of a BofA agent named Jennifer, Plaintiff took out a total of $49,440.00 in credit card cash advances over the phone. Two days later, a BofA agent assisted Plaintiff in wiring $50,000.00 to "Luxury Jewelries Gold Trading" for "Goods."

47. None of this banking activity, highly unusual for Plaintiff, was monitored, flagged, reported as suspicious, or prevented by the many BofA and Merrill representatives who effectuated the wire transfers, cash withdrawals and cash advances.

48. Defendants knew or should have known that the activity constituted financial elder abuse, as defined and outlined on its own website.

49. Defendants knew and should have known that by failing to follow its own policies, including failing to continuously monitoring Plaintiff's account for suspicious activity, Plaintiff would be harmed.

**COMPLAINT**  9

50.     Because of Defendants' repeated failure to provide Plaintiff with the same protection it promises all of its customers, Plaintiff has lost her entire retirement savings and owes over $50,000.00 (and growing) on three different credit cards.

**V.     CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Violation of The Elder Abuse And Dependent Adult Civil Protection Act**

**Cal. Welf. & Inst. Code § 15600, et seq.**

**(Against all Defendants)**

51.     Plaintiff incorporates by reference the allegations in paragraphs 1-35 as if they were set out in full herein.

52.     At all times herein mentioned, Plaintiff was an elder within the meaning of the California Welfare & Institutions Code and a resident of California. Defendants knew or should have known Plaintiff was an elder. Because of her age, Plaintiff was substantially more vulnerable to the deceptive taking of her retirement savings and assets.

53.     Defendants promise customers, including Plaintiff, that their fraud prevention "policies are always evolving to stay ahead of new strategies used by fraudsters"[11] via "multiple layers of security protection,"[12] and by "continuously monitoring [customer] transactions for suspicious activity."[13]

54.     Further, Defendants are mandated reporters of suspected financial abuse of an elder adult pursuant to Cal. Welf. & Inst. Code § 15630.1, were in direct contact with Plaintiff, reviewed Plaintiff's financial documents, records, and transactions in connection with providing financial services to her, gave investment and banking advice, and who, within the scope of their professional practice, observed, and knew

---

[11] https://www.bankofamerica.com/security-center/faq/protecting-information/
[12] *Id.*
[13] https://www.bankofamerica.com/security-center/understand-merchant-compromise/

that her sudden, suspicious, and highly unusual banking activity reasonably appeared to be financial abuse.

55.   Defendants observed and had knowledge of behavior and unusual circumstances and transactions that would lead an individual with adequate training or experience, based on the same facts, to form a reasonable belief that Plaintiff was the victim of financial abuse of an elder.

56.   Defendants own policies dictate for the continuous monitoring of such suspicious activity.

57.   Due to Defendants' policies, knowledge and expertise, the failure to report, prevent or delay the suspicious transfers of Plaintiff's money from December 2020 to May 2021 from five different accounts and three credit cards, constituted assisting in the taking of funds from Plaintiff for a wrongful purpose, with the intent to defraud.

58.   Defendants knew, or should have known, that their wrongful conduct was likely to be harmful to Plaintiff.

59.   By performing the acts set forth above, Defendants are liable for financial abuse of an elder.

60.   As a legal result of Defendants' conduct herein alleged, Plaintiff has suffered damages, including, without limitation, general and economic damages, in an amount according to proof at time of trial.

61.   The actions taken by Defendants set forth above were in all respects reckless, fraudulent, oppressive, and/or malicious, and manifested conscious disregard for the rights of Plaintiff. Plaintiff is therefore entitled to an award of exemplary and punitive damages pursuant to § 3294 of the California Civil Code, according to proof at trial.

62.   Plaintiff is entitled to reasonable attorney's fees and costs pursuant to Cal. Welf. & Inst. Code § 15657.5.

63.   Wherefore, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### Negligence

### (Against All Defendants)

64.     Plaintiff incorporates by reference the allegations in paragraphs 1-46 as if they were set out in full herein.

65.     At all relevant times, Defendants had a duty to act with reasonable care and exercise the ordinary skill and ability commonly exercised by bankers and investment advisors.

66.     At all relevant times, Defendants had a duty to protect customers from fraud (as they advertised on their websites[14]).

67.     Defendants breached their duties when their agents repeatedly invested, transferred, withdrew, and took out cash advances using Plaintiff's funds, without following their own policies for fraud monitoring, prevention and protection, failing to conduct any meaningful inquiry into the suspicious transactions, and failing to comply with mandated reporting mechanisms, or otherwise protecting Plaintiff and her hard-earned funds.

68.     At all times, Plaintiff relied completely on Defendants to utilize their skills and abilities as bankers and investment advisors in protecting, handling and investing Plaintiff's funds.

69.     It was reasonable for Plaintiff to have relied on Defendants in protecting, managing, transferring, and investing her funds, as a longtime customer of BofA, because Defendants promise customers that they "continuously monitor [customer transactions for suspicious activity] and BofA and Merrill agents and representatives

---

[14] *See* https://www.bankofamerica.com/security-center/faq/protecting-information/ ; https://www.bankofamerica.com/security-center/understand-merchant-compromise/ ; and  https://www.ml.com/privacy-and-security-center/protecting-financial-transactions.html



LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**COMPLAINT**

have far more expertise and experience in the financial realm than Plaintiff, and Defendants held themselves out as having experience and expertise in financial matters.

70.     As a direct and proximate result of the negligence of Defendants, Plaintiff has suffered substantial damages, the exact amount of which will be proven at trial, but exceeds the jurisdictional minimum of this Court.

71.     Wherefore, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against Merrill, A Bank of America Company)

72.      Plaintiff incorporates by reference the allegations in paragraphs 1-53 as if they were set out in full herein.

73.     At all relevant times, Merrill and its agents owed fiduciary duties to Plaintiff by virtue of the trust reposed in it by Plaintiff with respect to the management and investment of Plaintiff's capital. Merrill's fiduciary duties to Plaintiff included a duty of utmost loyalty, good faith and candor. As Plaintiff's fiduciary, Merrill also had a duty to refrain from taking actions detrimental to Plaintiff's interests, financial or otherwise.

74.     Plaintiff alleges that Merrill breached its fiduciary obligations to Plaintiff by undertaking to advise Plaintiff regarding financial matters, assisting to transfer tens of thousands of dollars into and then immediately out of a Merrill Investment Fund, and failing to fulfill its reporting requirements pursuant to Cal. Welf. & Inst. Code § 15630.1, despite reviewing Plaintiff's accounts and giving investment advice to Plaintiff.

75.     On information and belief, Merrill financially benefitted from its solicitation and sale of a Merrill investment product to Plaintiff, an elder.

---

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**

13

76.     As a direct and proximate result of Merrill's breaches of fiduciary duty, Plaintiff has suffered substantial damages, the exact amount of which will be proven at trial, but which exceeds the jurisdictional minimum of this Court.

77.     The conduct of Merrill and its agent(s) was gross, reckless and in bad faith or with willful disregard of its duties and of the rights and interest of its clients. Merrill assisted in the taking of Plaintiff's funds for its financial gain and profit and failed to initiate or ensure protections to prevent fraud from occurring.

78.     Plaintiff has suffered damages due to Merrill's conduct.

79.     Wherefore, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION
### Violation of California's Unfair Competition Law
### Bus. & Prof Code § 17200
### (Against all Defendants)

80.     Plaintiff incorporates by reference the allegations in paragraphs 1-60 as if they were set out in full herein.

81.     Defendants' conduct was unlawful, unfair, and/or fraudulent within the meaning of Business & Professions Code § 17200.

82.     Defendants' conduct was unlawful within the meaning of Business & Professions Code § 17200 in that, among other conduct and statutes, Defendants' conduct violated Cal. Welf. & Inst. Code § 15630.1 *et seq*., as described in this Complaint.

83.     Among other things, Defendants' agents and representatives failed to protect Plaintiff, an elder within the meaning of the California Welfare & Institutions Code and a resident of California, from predatory elder financial abuse, by failing to follow its own fraud monitoring, prevention and protection policies and transferring hundreds of thousands of dollars of Plaintiffs' funds via wire transfers and cash withdrawals and failing to fulfill their reporting requirements pursuant to Cal. Welf. & Inst. Code § 15630.1.

84.     Defendants' actions are part of a general business practice that was effectuated by numerous agents and representatives across various different BofA locations in Ventura County.

85.     By reason of the acts and conduct alleged herein, Plaintiff has suffered injury in fact.

86.     Defendants have derived economic benefit by failing to follow their fraud prevention and protection policies and assisting in the taking of Plaintiff's funds from her BofA accounts. Plaintiff has a right to an order requiring Defendants to restore Plaintiff's money and interest, which may have been acquired by unfair, unlawful and/or fraudulent business practices, as well as the resulting general damages.

87.     Pursuant to Business & Professions Code § 17203, Plaintiff seeks from Defendants restitution of all earnings, profits, compensation and benefit it obtained from Plaintiff, as a result of its conduct in violation of Business & Professions Code §§ 17200 *et seq*., as described herein.

88.     Plaintiff further seeks injunctive relief preventing Defendants from collecting on any outstanding debts owed by Plaintiff to Defendants.

89.     Wherefore, Plaintiff prays for relief as set forth below.

## VI.     <u>PRAYER FOR RELIEF</u>

1.     Injunctive relief to prevent Defendants from collecting from Plaintiff any outstanding debts;

2.     Compensatory damages in an amount according to proof at trial;

3.     Special and general damages in an amount according to proof;

4.     Restitution in an amount according to proof;

5.     Exemplary and punitive damages according to proof;

6.     Costs of suit herein incurred;

7.     Pre- and post-judgment interest at the maximum legal rate:

8.     For attorneys' fees; and,

9.     For such other relief as the Court may deem just and proper.

**COMPLAINT**                                                                                    15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VII.     DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

Dated: October 22, 2021          **COTCHETT, PITRE & McCARTHY, LLP**

By:  _/s/ Kelly W. Weil_
    NIALL P. McCARTHY
    KELLY W. WEIL
    THERESA E. VITALE

*Attorneys for Plaintiffs*

**COMPLAINT**