AUSTIN B. KENNEY (State Bar No. 242277)
abk@severson.com
MATTHEW J. ESPOSITO (State Bar No. 223445)
mje@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

Attorneys for Defendants
BANK OF AMERICA, N.A. and
MERRILL LYNCH PIERCE FENNER &
SMITH INC. (erroneously sued as Merrill)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANGELITA MILLARE, individually,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A., a Delaware corporation, MERRILL, A BANK OF AMERICA COMPANY, a Delaware Corporation,<br><br>Defendants. | Case No. 2:21-cv-08398-PA-KES<br>The Hon. Percy Anderson<br>Ctrm. 9A (1st St.)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>*[Filed concurrently with Notice of Motion to Dismiss; Request for Judicial Notice; Proposed Order]*<br><br>Date:     March 28, 2022<br>Time:    1:30 p.m.<br>Crtrm.:  9A<br><br>Trial Date:          TBD |

70001.0687/16051048.1

Case No. 2:21-cv-08398-PA-KES
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

*Page*

I. INTRODUCTION ................................................................................................ 1

II. THE FAC DOES NOT STATE A VIABLE ELDER ABUSE CLAIM ........ 1

   A. The FAC Does Not Allege Facts Showing Actual Knowledge ............ 1

   B. The FAC Does Not Allege Facts Showing Substantial Assistance ........................................................... 4

   C. The FAC Does Not Allege That BANA Fraudulently Took Wire Fees .................................................... 4

III. THE FAC DOES NOT ALLEGE A VIABLE UCL CLAIM ....................... 6

   A. The FAC Does Not Allege An Unlawful, Unfair Or Fraudulent Practice ............................................................................ 6

      1. No Unlawful Business Practice Is Alleged ................................ 6

      2. No Unfair Business Practice Is Alleged ..................................... 6

      3. No Fraudulent Business Practice Is Alleged .............................. 8

   B. The FAC Does Not Show Entitlement To Either UCL Remedy .......... 9

IV. CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Acunis-Graham v. Select Portfolio Servicing, Inc.*,
　No. CV 17-03143-CBM-SS, 2018 WL 5880073
　(C.D. Cal. Aug. 16, 2018) ....................................................................................5

*Alvarez v. Chevron Corp.*,
　656 F.3d 925 (9th Cir. 2011) ...............................................................................6

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) .............................................................................................3

*Barrett v. Apple Inc.*,
　523 F. Supp. 3d 1132 (N.D. Cal. 2021)................................................................5

*Becerra v. Dr Pepper/Seven Up, Inc.*,
　945 F.3d 1225 (9th Cir. 2019) .............................................................................8

*Bortz v. JPMorgan Chase Bank, N.A.*,
　No. 21-CV-618 TWR (JLB), 2021 WL 4819575
　(S.D. Cal. Oct. 15, 2021) ..................................................................................2, 3

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
　20 Cal. 4th 163 (1999).......................................................................................6, 9

*Chazen v. Centennial Bank*,
　61 Cal. App. 4th 532 (1998).................................................................................7

*Das v. Bank of Am., N.A.*,
　186 Cal. App. 4th 727 (2010)............................................................................4, 5

*Day v. AT&T Corp.*,
　63 Cal. App. 4th 325 (1998).................................................................................9

*Feitelberg v. Credit Suisse First Bos., LLC*,
　134 Cal. App. 4th 997 (2005).............................................................................10

*Gloria v. E-Loan*,
　No. A126331, 2010 Cal. App. Unpub. LEXIS 8692, 2010 WL
　4263733 (Oct. 29, 2010) ......................................................................................9

*Hauck v. Advanced Micro Devices, Inc.*,
　816 Fed. Appx. 39 (9th Cir. 2020) .......................................................................6

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .................................................................................. 10

*Kurtz-Ahlers, LLC v. Bank of Am., N.A.*,
    48 Cal. App. 5th 952 (2020) ............................................................................. 8

*Lavie v. Procter & Gamble Co.*,
    105 Cal.App.4th 496 (2003) ............................................................................. 8

*Lopez v. Wash. Mut. Bank, F.A.*,
    302 F.3d 900 (9th Cir. 2002) ............................................................................ 6

*Lozano v. AT&T Wireless Servs.*,
    504 F.3d 718 (9th Cir. 2007) ........................................................................ 6, 7

*Mackintosh v. JPMorgan Chase Bank*,
    No. 18-cv-03348-SK, 2018 WL 3913791
    (N.D. Cal. July 13, 2018) ................................................................................. 3

*Madrid v. Perot Sys. Corp.*,
    130 Cal. App. 4th 440 (2005) ......................................................................... 10

*Mayron v. Google LLC*,
    54 Cal. App. 5th 566 (2020) ............................................................................. 8

*Paslay v. State Farm Gen. Ins. Co.*,
    248 Cal. App. 4th 639 (2016) ........................................................................... 5

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ............................................................................ 4

*S&S Worldwide, Inc. v. Wells Fargo Bank*,
    509 F. Supp. 3d 1154 (N.D. Cal. 2020) ............................................................ 3

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*
    49 Cal.App.4th 472 (1996) ............................................................................... 8

*Stebley v. Litton Loan Servicing, LLP*,
    202 Cal. App. 4th 522 (2011) ........................................................................... 5

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ..................................................................................... 9

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008) ............................................................................. 8

*Statutes*

California Business and Professions Code
  Section 17200 ................................................................................................... 1
  Section 17204 ................................................................................................... 8

California Welfare and Institutios Code
  Section 15610.30 ............................................................................. 1, 4, 5, 6, 10
  Section 15630.1 ................................................................................................ 6

*Other Authorities*

Federal Rules of Civil Procedure
  Rule 12 .............................................................................................................. 1

# I.
# INTRODUCTION

Under Fed. R. Civ. P. 12(b)(6), defendants Bank of America, N.A. ("BANA") and Merrill move to dismiss plaintiff Angelita Millare's ("Millare's") first amended complaint ("FAC") and each of its two causes of action, which, like the original complaint's four causes of action, seek to hold BANA and Mrrrill liable for losses Millare suffered when she followed a Facebook scammer's instructions and wire transferred her savings to foreign bank accounts.

On January 25, 2022, the Court granted defendants' motion to dismiss Millare's original complaint with leave to amend only its Elder Abuse[1] and UCL[2] claims. Dkt. # 26. Though filed in response to that order, the FAC does not cure the defects the order found in those two claims. So, the Court should now dismiss the FAC and each of its two claims without leave to amend.

# II.
# THE FAC DOES NOT STATE A VIABLE ELDER ABUSE CLAIM

## A.   The FAC Does Not Allege Facts Showing Actual Knowledge

To allege a viable claim against defendants for assisting the scammer in taking Millare's property for a wrongful use or with intent to defraud in violation of Welfare and Institutions Code § 15610.30(a)(2), Millare must allege facts showing that defendants had actual knowledge of the specific wrong committed against her. Dkt. # 28, at 4.

Millare's original complaint fell short of doing so, alleging only "facts showing that [Millare] conducted a series of suspicious and unprecedented transactions in a short period of time." *Id.* at 5.

---

[1]   The Elder Abuse claim attempts to allege "financial elder abuse" in violation of California Welfare and Institutions Code § 15610.30(a)

[2]   The UCL claim attempts to allege a violation of the Unfair Competition Law, California Business and Professions Code § 17200.

Millare's FAC tries to cure that defect by alleging that defendants "must have known"[3] Millare was the victim of elder abuse because

    1.    Millare's wire transfers and withdrawals constituted "erratic and unusual banking transaction[s]" and "a profound change in [Millare's] banking pattern" and were "uncharacteristic of [Millare's] practices"—which the Federal Reserve Board's Interagency Guidance identifies as "well-known hallmarks of financial abuse of older adults," Dkt. #27, ¶¶ 7, 52-58, 71-74, and

    2.    Most of the wire transfers exceeded $10,000, the threshold above which BANA had to file a Currency Transaction Report with the U.S. Treasury, which "would have alerted the scrutiny of [BANA's] management," *id.*, ¶¶ 5, 59-60.

These allegations do not show actual knowledge. First, though made against "defendants," the allegations plainly fail to show even constructive knowledge by Merrill, which is not alleged to have been aware of Millare's banking pattern or practices or her later "erratic and unusual" banking transactions and which would not have been required to file Currency Transaction Reports regarding transactions Millare carried out at BANA.

Second, neither of the allegations suffices to show that BANA had actual knowledge that Millare was a victim of elder abuse. Rather, the allegations show, at most, that BANA ignored red flags and "hallmarks" of elder abuse. In *Bortz,* the complaint contained identical allegations that the bank ignored the Interagency Guidelines and its own Currency Transaction Reports.[4] *Bortz v. JPMorgan Chase*

---

[3] The FAC alleges that because the red flags of elder abuse were so blatant, "there is no question Defendants knew" and "[n]o other plausible explanation existed for" BANA's approving these transactions. Dkt. # 27, ¶¶ 57, 58.

[4] "Plaintiffs counter that the following facts alleged in their Complaint support an inference of Defendants' actual knowledge of the underlying fraud: (1) the Department of the Treasury ("DOT") published an advisory for financial institutions in February 2011, which "described the potential signs of elder financial exploitation," including changes in banking patterns and "[u]ncharacteristic attempts to wire large

(Fn. cont'd)

*Bank, N.A.,* No. 21-CV-618 TWR (JLB), 2021 WL 4819575, at *4 (S.D. Cal. Oct. 15, 2021). The Court found those allegations insufficient.

> Plaintiffs here allege that Defendants had constructive knowledge of—i.e., they should have known about—the underlying fraud based on the[] unusual account activity. That alone, however, fails sufficiently to allege the requisite actual knowledge.

*Id.*, at *5 (citations omitted); *see also Mackintosh v. JPMorgan Chase Bank,* No. 18-cv-03348-SK, 2018 WL 3913791, at *3 (N.D. Cal. July 13, 2018) ("[Plaintiff] only alleges facts to show constructive knowledge: that he and his wife 'almost never withdrew cash from the bank, other than a few hundred dollars on occasion' and yet, over an eight-month period, [Plaintiff] made over thirty cash withdrawals in sums ranging from $1,000 to over $100,000" [the latter amounts exceeding the Currency Transaction Report threshold]).

Millare's FAC also adds an ample dose of conclusory words or phrases, such as "knowing assistance," "defrauded," "assisted in defrauding," "actual knowledge" and deletes allegations that defendants "should have known." Dkt. # 27, ¶¶ 1, 2, 4, 9, 49, 50, 72-74. But those conclusions do not satisfy *Iqbal/Twombly* pleading standards. *S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154, 1165 (N.D. Cal. 2020) ("a plaintiff may not merely allege that a defendant 'knew' of some specified circumstance"). They "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal,* 556 U.S. 662, 680-81 (2009) (allegation Ashcroft "knew of" "harsh conditions of confinement").

---

sums of money"; (2) "the highly unusual activity in Plaintiff's account must have raised huge red flags, all of which fell within the warning signs of financial elder abuse" under the February 2011 advisory; and (3) the wire transfers exceeded DOT's $10,000 threshold for filing a Currency Transaction Report, which would have required Chase's management to scrutinize Plaintiffs, the transaction amount, and the recipient(s)." *Bortz,* 2021 WL 4819575, at *4.

## B. The FAC Does Not Allege Facts Showing Substantial Assistance

The FAC also fails to allege facts satisfying the second requirement for aiding and abetting or "assisting" liability; namely, that BANA or Merrill gave "substantial assistance or encouragement to the other [i.e., the scammer] to so act [i.e., to commit elder abuse]." *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 744 (2010) (*quoting Casey v. U.S. Bank Nat'l Ass'n,* 127 Cal. App. 4th 1138, 1144 (2005)).

As defendants pointed out in their motion to dismiss the original complaint, Dkt. #18-1, 9:16-21, Millare does not allege that BANA or Merrill substantially assisted the scammer. Instead, she alleges only that BANA assisted *her* by helping her complete the transactions that she admits she authorized; namely, withdrawing money from her accounts and sending wire transfers. Dkt. # 27, ¶¶ 28, 29, 42-47. Helping senior citizens complete banking transactions they authorize is not elder abuse. *Das*, 186 Cal. App. 4th at 742-43, 745; *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788, 809 (9th Cir. 2007) ("merely processing credit card payments" is insufficient "assistance" to support a claim the defendant aided and abetted the merchant's false advertising and UCL violation).

## C. The FAC Does Not Allege That BANA Fraudulently Took Wire Fees

Unlike Millare's original complaint which averred only a violation of § 15610.30(a)(2) by "assisting" the scammer's taking Millare's property, the FAC attempts to allege that BANA violated § 15610.30(a)(1) by charging Millare a $45 fee for each of her wire transfers and thus directly "taking" Millare's property.[5] Dkt. # 27, ¶¶ 61, 69, 70, 75.

These allegations state no viable claim under § 15610.30(a)(1) because they do not allege or support a reasonable inference that BANA took its customary wire transfer fees "for a wrongful use or with intent to defraud, or both," as is required to

---

[5] The FAC does not allege any facts to show that Merrill participated in the wire transfers in any manner, charged Millare any fee, or otherwise "took" any of her property.

establish a violation of § 15610.30(a)(1).

The FAC does not allege any facts to show that BANA charged its customary wire transfer fees "with intent to defraud." Nor could it. There is nothing misleading, deceptive or fraudulent about charging a fee for providing banking services.

Nor does the FAC allege any facts to show that BANA charged the wire transfer fees "for a wrongful use." Read in light of § 15610.30(b), "wrongful use" means "a breach of the contract, or other improper conduct," taken "in subjective bad faith" with actual or constructive knowledge of its harmful effect on the elder. *Paslay v. State Farm Gen. Ins. Co.*, 248 Cal. App. 4th 639, 657-58 (2016).

"[T]he 'wrongful use' requirement is not met where a defendant acted reasonably and in good faith. *Acunis-Graham v. Select Portfolio Servicing, Inc.*, No. CV 17-03143-CBM-SS, 2018 WL 5880073, at *6 (C.D. Cal. Aug. 16, 2018). Allegations that conduct is merely "financially disadvantageous to an elder" are not enough. *Paslay*, 248 Cal. App. 4th at 657; *see also Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 527-28 (2011) (holding that valid foreclosure of home owned by elderly plaintiffs did not constitute a "wrongful use" of their property).

Millare's FAC does not allege that BANA breached any contract or committed any other "improper conduct" in charging her the bank's normal fee for each of the wire transfers she directed it to send. Nor does the FAC aver any facts to show BANA charged those fees "in subjective bad faith."

Instead, the FAC alleges only that BANA charged Millare the same wire transfer fees it charged other customers. BANA's "alleged behavior thus does not rise to the level of 'wrongful use,' or 'intent to defraud,' sufficient to state a claim for elder abuse under the California Elder Abuse Law § 15610.30(a)(1)." *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1160 (N.D. Cal. 2021). That, unbeknownst to BANA, a scammer fraudulently induced Millare to send the wire transfers does not transform BANA's ordinary transaction fee into a taking of Millare's property for "a wrongful use" in violation of § 15610.30(a)(1). *See Das,* 186 Cal. App. 4th at 744.

## III.

## THE FAC DOES NOT ALLEGE A VIABLE UCL CLAIM

The FAC makes only minimal changes to the original complaint's UCL claim, adding a few conclusory words to paragraphs 82, 83 and 87, and a new concluding sentence to paragraph 84. None of these changes fixes the claim's defects which defendants pointed out in moving to dismiss the original complaint.

**A.    The FAC Does Not Allege An Unlawful, Unfair Or Fraudulent Practice**

California's UCL prohibits unlawful, unfair or fraudulent business practices as well as false advertising. Each of those prongs is a separate and distinct theory of liability. *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007).

**1.    No Unlawful Business Practice Is Alleged**

The UCL's "unlawful" prong borrows violations of other laws, making them independently actionable under the UCL. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n. 8 (9th Cir. 2011).

This Court has already ruled that Millare cannot state a UCL "unlawful" claim based on defendants' alleged failure "to fulfill their reporting requirements pursuant to Cal. Welf. & Inst. Code § 15630.1." Dkt. # 27, ¶ 84; Dkt. # 26, at 8.

Insofar as the UCL claim is based on the FAC's allegations of financial elder abuse in violation of § 15610.30(a), it fails to state an unlawful business practice for the same reasons it states no Elder Abuse claim. *See* pp. 1-5 above; Dkt. # 26, at 8; *see Lopez v. Wash. Mut. Bank, F.A.*, 302 F.3d 900, 907 (9th Cir. 2002) (holding that plaintiff's UCL claim failed as a matter of law because it "require[d] some violation of substantive law, and in this case there has been none")..

**2.    No Unfair Business Practice Is Alleged**

Like Millare's original complaint, her FAC also fails to allege a business practice that is "unfair" under "either the 'tether[ing]' or the 'balancing' tests." *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735-36 (9th Cir. 2007); *Hauck*

*v. Advanced Micro Devices, Inc.*, 816 Fed. Appx. 39, 43 (9th Cir. 2020).[6]

The FAC alleges only that defendants "failed to protect" Millare from financial elder abuse, "fail[ed] to follow [their] own fraud monitoring, prevention and protection policies[7] and transferr[ed] hundreds of thousands of dollars of Plaintiffs' funds via wire transfers and cash withdrawals," "charging [her] a fee for doing so." Dkt. 27, ¶ 84.

Those allegations fail to support any unfairness claim under the "tethering" test. Nothing in the Elder Abuse Act imposes a duty on a bank to supervise its elderly customers' accounts, refuse to process their duly authorized transactions, or not charge them normal service fees for those transactions.

To the contrary, California cases hold that a bank "does not [owe] any implied duty 'to supervise account activity' or 'to inquire into the purpose for which the funds are being used.' " *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537 (1998) (citations omitted). Two "important [public] policies militat[e] against requiring banks to 'police' deposit accounts": the customer's right to privacy in financial transactions and the policy "of facilitating the efficient processing of

---

[6] Under the "tethering" test, a business practice is "unfair" if the unfairness is "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Lozano*, 504 F.3d at 735 (*quoting Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 186-87 (1999)). The "balancing test" "involves balancing the harm to the consumer against the utility of the defendant's practice." *Lozano*, 504 F.3d at 735.

[7] No authority supports Millare's apparent notion that a UCL claim can be based on a defendant's breach of its own internal policies. Moreover, the FAC grossly mischaracterizes the webpages she cites as showing the supposed policies BANA allegedly violated. To take just one example, the FAC alleges that "BANA claims to 'continuously monitor [customer] transactions for suspicious activity." Dkt. # 27, ¶ 37. In fact, the cited webpage states that BANA monitors customer accounts when informed that the customer's personal information has been exposed by a merchant's data breach. *See* RJN, Ex. B. Millare does not allege her personal information was exposed. She authorized all the wire transfers. No third party did so using information obtained from any data breach.

banking transactions." *Kurtz-Ahlers, LLC v. Bank of Am., N.A.*, 48 Cal. App. 5th 952, 960 (2020).

Nor is failure to police an elder's use of her bank account "unfair" under the "balancing test." To paraphrase *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc*. 49 Cal.App.4th 472, 483 (1996): "[T]he burden on banks, if we were to recognize a duty of inquiry and detection in the circumstances of [Millare's] complaint, is out of proportion to the potential harm averted by such a result. Scrutiny into the financial and business affairs of [elderly] customers for the express purpose of ferreting out [potential elder abuse] would be intrusive for the citizenry and add to the cost of financial transactions, both in terms of time and money." *See also Kurtz-Ahlers, LLC*, 48 Cal. App. 5th at 961.

### 3. No Fraudulent Business Practice Is Alleged

A business practice is "fraudulent" in violation of the UCL if it is likely to deceive reasonable consumers or members of the public. *Lavie v. Procter & Gamble Co*., 105 Cal.App.4th 496, 506-07 (2003); *Williams v. Gerber Prod. C*o., 552 F.3d 934, 938 (9th Cir. 2008); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019).

The FAC does not allege any facts showing that anything BANA or Merrill is alleged to have done with respect to Millare's transactions were likely to mislead her or reasonable members of the public.

Furthermore, to have standing to sue for a fraudulent business practice, Millare must allege she actually relied on the misleading aspect of the business practice. "An action can be brought [under the UCL] only 'by a person who has suffered injury in fact and has lost money or property *as a result of* the unfair competition.' [Bus. & Prof. Code § 17204 (emphasis added).] It is not enough that a plaintiff lost money; to have standing, there must be a causal link between the unlawful practice and the loss." *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 574, (2020) (*citing Hall v. Time, Inc.,* 158 Cal. App. 4th 847, 849 (2008)). The phrase "as

a result of" "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

The FAC does not allege that Millare actually relied on any false or misleading aspect of BANA's or Merrill's handling of her transactions. To the contrary, the FAC avers only a conclusion—that Millare suffered an injury in fact "[a]s a result of" the alleged "acts and conduct"—without any supporting facts to make that conclusion plausible. *See* Dkt. # 27, ¶ 86.

## B.   The FAC Does Not Show Entitlement To Either UCL Remedy

Under the UCL, private "plaintiffs are generally limited to injunctive relief and restitution. Plaintiffs may not receive damages, much less treble damages, or attorney fees." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 179 (citations omitted).

Thus, the FAC's reference to "resulting general damages" is misplaced. *See* Dkt. # 27, ¶ 87. Millare cannot recover damages under the UCL.

The FAC also fails to allege a proper claim for restitution. Restitution requires that defendants retained something belonging to Millare. *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 340 (1998) ("[T]he notion of restoring something to a victim of unfair competition includes two separate components. The offending party must have obtained something to which it was not entitled and the victim must have given up something which he or she was entitled to keep."); *Gloria v. E-Loan*, No. A126331, 2010 Cal. App. Unpub. LEXIS 8692, at *37-38, 2010 WL 4263733 (Oct. 29, 2010) (same).

Millare does not allege that defendants retained any money that belonged to her, other than the normal $45 wire transfer fee. She does not and cannot allege facts showing that BANA was not entitled to collect that fee or that she was entitled to use BANA's wire transfer services without paying that fee.

The new sentence at the end of paragraph 84 does not establish any entitlement to restitution either. It states: "Defendants failed to credit Plaintiff's accounts

the amount of the money wrongfully taken, and therefore possess money belonging to them [sic: Millare?] in violation of Welfare & Institutions Code § 15610.30 and/or 15657.6, hence by means of unfair competition." Dkt. # 27, ¶ 84.

If "the money wrongfully taken" refers to the $45 wire transfer fees, the sentence shows no right to restitution because, as just stated, the fees were not "wrongfully taken." If, on the other hand, "the money wrongfully taken" refers to the sums Millare withdrew and/or transferred to the scammer, the sentence shows no right to restitution because BANA never obtained those sums. That BANA did not credit Millare's accounts for money she was fraudulently induced to send to a third party does show that BANA "possesses" the money Millare sent to that third party. *See Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 456 (2005) ("[P]laintiff fails to cite any authority that a UCL plaintiff may recover money from a defendant who never received it on a theory that the defendant conspired with or aided someone else who did receive it. This sounds like damages (which are unavailable under the UCL) rather than restitution.").

Millare fares no better in seeking "restitution of all earnings, profits, compensation and benefit [defendants] obtained from Plaintiff." Dkt. # 27, ¶ 88. To begin with, Millare alleges no facts showing that defendants actually obtained any earnings, etc. from her. Moreover, this allegation seeks a form of nonrestitutionary disgorgement, focused on the defendant's gain rather than the plaintiff's loss, that the UCL does not allow. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003); *Feitelberg v. Credit Suisse First Bos., LLC*, 134 Cal. App. 4th 997, 1016-20 (2005); *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 460-62 (2005).

Millare's request for an injunction against collection of any debts she owes defendants is equally misplaced. *See* Dkt. # 27, ¶ 89. The only debt Millare alleges is the $49,440 in credit card cash advances she took out over the phone. *Id.*, ¶ 47. She does not allege that this debt, which she voluntarily incurred, was caused by any

act or practice that violated the UCL, nor does she aver that defendants are attempting to collect that debt or threaten to do so.

In short, Millare alleges neither a violation of the UCL nor entitlement to a remedy that the UCL affords a private plaintiff.

## IV.
## CONCLUSION

For all of the reasons stated above, the Court should dismiss Millare's first amended complaint and each of its causes of action. This time, the dismissal should be without leave to amend, as Millare has shown she is incapable of stating facts sufficient to support her Elder Abuse and UCL claims.

DATED: February 21, 2022

SEVERSON & WERSON
A Professional Corporation

By: _/s/ Matthew J. Esposito_
MATTHEW J. ESPOSITO

Attorneys for Defendants
BANK OF AMERICA, N.A. and
MERRILL LYNCH PIERCE FENNER &
SMITH INC. (erroneously sued as Merrill)

# DECLARATION OF MATTHEW J. ESPOSITO

I, Matthew J. Esposito, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California. I am an associate with Severson & Werson APC, attorneys of record for Defendants BANK OF AMERICA, N.A. and MERRILL ("Defendants"). The following is based upon my knowledge and if called upon to testify, I could and would do so. This Declaration is in support of Defendants' Motion to Dismiss Plaintiff's Complaint.

2. Pursuant to Central District Local rule 7-3, on February 16, 2022, I communicated with Kelly Weil and Theresa Vitale, counsel for Plaintiff. Said communications explained the reasons that the First Amended Complaint was subject to a F.R.C.P. Rule 12(b)(6) motion and provided case citations. Plaintiff's counsel confirmed via email that the Local Rule's meet and confer requirements had been sufficiently satisfied.

3. This Motion is made following the attempted conference of counsel pursuant to L.R. 7-3.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 21st day of February, 2022, at Irvine, California.

*/s/ Matthew J. Esposito*
MATTHEW J. ESPOSITO

# PROOF OF SERVICE

**ANGELITA MILLARE V. BANK OF AMERICA, N.A., ET AL.**
**USDC Central Case No. 2:21-CV-8398 PA-KES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium, 19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

On February 22, 2022, I served true copies of the following document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

on the interested parties in this action as follows:

| | |
|---|---|
| Kelly Christina Weil, Esq.<br>Theresa Vitale , Esq.<br>Cotchett Pitre and McCarthy LLP<br>2716 Ocean Park Boulevard Suite 3088<br>Santa Monica, CA 90405<br><br>Niall P McCarthy, Esq.<br>Cotchett Pitre and McCarthy LLP<br>San Francisco Airport Office Center<br>840 Malcolm Road<br>Burlingame, CA 94010 | Attorneys for Plaintiff<br>ANGELITA MILLARE<br><br>Tel: 310-392-2008<br>Fax: 310-392-0111<br>Email: kweil@cpmlegal.com<br>Email: tvitale@cpmlegal.com<br>Email: nmccarthy@cpmlegal.com |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 22, 2022, at Irvine, California.

_____
Dana R. Armbruster

70001.0687/15950603.1